**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**
*Electronically filed*

**CHRISTOPHER REED, an individual**

**and**                                          **Civil Case NO. _____**

**CLYDE REED, an individual,**                                          **PLAINTIFFS,**

**V.**

**BREATHITT COUNTY ANIMAL CONTROL;**
**BREATHITT COUNTY SHERIFF;**
**ANGELS AND WARRIORS FOR HORSE WELFARE L.L.C.;**
**JAMIE HOLBROOK, individually and in his**
**official capacity as Breathitt County Animal Control;**
**MIKE WOLFE, individually and in his official capacity as**
**officer for the Breathitt County Sheriff;**
**JAMES HOLBROOK, an individual**                                          **DEFENDANTS.**

---

## COMPLAINT

---

Comes now the Plaintiffs, Christopher Reed and Clyde Reed, by and through counsel with their causes of action against the Defendants, Breathitt County Animal Control, Breathitt County Sheriff, Jamie Holbrook, individually and in his official capacity as officer for Breathitt County Animal Control, Mike Wolfe, individually and in his official capacity as officer for Breathitt County Sheriff, and James Holbrook. For their causes of action, Plaintiffs assert the following:

### PARTIES

1. Plaintiff, Christopher Reed is a resident of Floyd County, Kentucky.

2.  Plaintiff, Clyde Reed is a resident of Floyd County, Kentucky.

3.  Defendant, Jamie Holbrook is a resident of Breathitt County, Kentucky.

4.  Defendant, James Holbrook is the father of Jamie Holbrook and, at all relevant times hereto, a resident of Breathitt County, Kentucky.

5.  At all relevant times hereto, Defendant, Mike Wolfe is an officer for the Breathitt County Sheriff and a resident of Breathitt County, Kentucky.

6.  The Defendant, Breathitt County Sheriff is located at 1137 Main Street, Jackson, Kentucky 41339.

7.  At all relevant times hereto, Jamie Holbrook, was the animal control officer for Breathitt County Animal Control located at 1137 Main Street, Jackson, Kentucky 41339.

8.  Defendant, Angels and Warriors for Horse Welfare L.L.C., henceforth referred to as AWHW, is Kentucky limited liability company classified as a Non-profit.

9.  AWHW has a principal office located at 121 Pleasure View Road, London, Kentucky 40744.

10. AWHW's registered agent for service of process is listed as Angels and Warriors for Horse Welfare at 121 Pleasure View Road, London, Kentucky 40744.

11. AWHW is a member managed limited liability company allegedly engaged in equine welfare and having a presence in Breathitt County, Kentucky.

12. Jamie Holbrook, at all relevant times hereto, is a member and an agent of AWHW.

13. AWHW organized on August 24th, 2023.

14. Jamie Holbrook was an organizer of AWHW.

## **JURISDICTION**

**15.** The United States District Court for the Eastern District of Kentucky has original jurisdiction of this case due to claims asserted pursuant to 42 U.S.C. § 1983.

**16.** The United States District Court for the Eastern District of Kentucky has supplemental jurisdiction of the Kentucky state law tort claims under 28 U.S.C. § 1367 because said state law claims are so related to the other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**17.** The United States District Court for the Eastern District of Kentucky is the proper venue as the events giving rise to the Plaintiffs' claims occurred in Breathitt County, Kentucky.

## **FACTS**

18. Christopher Reed and Clyde Reed are two brothers who are equestrian hobbyists engaged in the horse trade.

19. There is a large area of land in Breathitt County, Kentucky where there are hundreds of horses, if not a thousand, that freely roam and graze the land.

20. This aforementioned area of land is often referred to colloquially as a "strip job."

21. This aforementioned area of land shall henceforth be referred to as "the strip job" in this Complaint.

22. Prior to and on November 3rd, 2023, the strip job had commonly been utilized by people of the region involved within the local equine industry to graze and free range horses.

23. Prior to and on November 3rd, 2023, the strip job was commonly used by the Plaintiffs to graze and free range horses.

24. Prior to and on November 3rd, 2023, Jamie Holbrook, James Holbrook, and Mike Wolfe

knew the Plaintiffs regularly used the strip job to graze and free range horses.

25. Prior to and on November 3rd, 2023, many of the horses on the strip job belong to individuals.

26. Prior to and on November 3rd, 2023, many of the horses on the strip job are strays.

27. Prior to and on November 3rd, 2023, the Defendants, Jamie Holbrook, James Holbrook, and Mike Wolfe, were aware of the fact the strip job was commonly utilized by people of the region involved within the local equine industry to graze and free range horse.

28. Prior to and on November 3rd, 2023, the Defendants, Jamie Holbrook, James Holbrook, and Mike Wolfe, were aware of the fact the strip job contained horses belonging to individuals.

29. Prior to and on November 3rd, 2023, the Defendants, Jamie Holbrook, James Holbrook, and Mike Wolfe, were aware of the fact the strip job contained unclaimed stray horses.

30. On November 3rd, 2023, Kentucky Revised Statute 259.110, authorized a stray equine to be taken up by any person or entity if found running at large outside of its enclosure or if it can be determined from the circumstances that its owner has abandoned it.

31. Prior to and on November 3rd, 2023, Jamie Holbrook, James Holbrook, and Mike Wolfe, were aware strays could be taken up by anyone.

32. Prior to November 3rd, 2023, Jamie Holbrook was very well acquainted with Christopher Reed.

33. Prior to November 3rd, 2023, James Holbrook was very well acquainted with Clyde Reed.

34. Prior to November 3rd, 2023, Jamie Holbrook and James Holbrook began to express

disaffection with others using the strip job to graze horses.

35. Prior to November 3rd, 2023, James Holbrook began to claim ownership of various horses on the strip job.

36. Many of the horses that James Holbrook claimed ownership of were not strays.

37. Many of the horses that James Holbrook claimed ownership of were the property of other individuals.

38. Prior to November 3rd, 2023, Darryl Godsey was the owner of a yellow filly horse that was living on the strip job.

39. Said yellow filly horse is frequently referred to in court documents as a colt and henceforth shall be referred to in this Complaint as "the colt."

40. Prior to November 3rd, 2023, Clyde Reed entered into an agreement with Darryl Godsey to purchase the colt.

41. Prior to November 3rd, 2023, Darryl Godsey called Jamie Holbrook on the telephone to inform him he had sold the colt to Clyde Reed.

42. Prior to the aforementioned phone call, Jamie Holbrook had been telling others, including Darryl Godsey, to "stay away from the Reeds because I'm going to get them."

43. Prior to the aforementioned phone call, Jamie Holbrook and James Holbrook had been telling others, including Darryl Godsey, that the Reeds were horse thieves.

44. Jamie Holbrook and James Holbrook knew the Reeds had not been stealing horses.

45. After the aforementioned phone call, but prior to November 3rd, 2023, James Holbrook told Darryl Godsey that he should not have sold the colt to Clyde Reed.

46. Prior to November 3rd, 2023, and prior to the phone call, in the month of April, 2023,

there was an incident involving Darryl Godsey, Jamie Holbrook, James Holbrook, and Mike Wolfe.

47. During the incident of April, 2023, Christopher Reed sold a horse to Darryl Godsey.

48. During the incident of April, 2023, while on the strip job, Christopher Reed and James Holbrook helped load the aforementioned horse into Darryl Godsey's trailer.

49. During the incident of April, 2023, Jamie Holbrook and Mike Wolfe stopped Darryl Godsey and forced him to release the horse.

50. During the incident of April, 2023, they did not cite Darryl Godsey with a crime.

51. During the incident of April, 2023, Jamie Holbrook and Mike Wolfe were acting under the color of law.

52. Around the time of the incident of April, 2023, James Holbrook began to tell others he was the owner of many of the horses on the land that were actually the property of others.

53. Around the time of the incident of April, 2023, Jamie Holbrook began to tell others the strays were the property of the Commonwealth of Kentucky.

54. Around the time of the incident of April, 2023, Jamie Holbrook, James Holbrook, and Mike Wolfe began to systematically remove horses from the strip job whose owners' were not easily identifiable for the purpose of selling those horses for personal profit.

55. Starting around the time of April, 2023, many horses living on the strip job began to turn up missing, including horses that belonged to the Plaintiffs.

56. Starting around the time of April, 2023, many horses living on the strip job began to turn up dead, including horses that belonged to the Plaintiffs.

57. Prior to April, 2023, it was uncommon for horses to turn up dead or missing on the strip

job.

58. After the establishment of AWHW, Jamie Holbrook and James Holbrook began to utilize AWHW to easily and efficiently obtain and sell horses found on the strip job for their own personal profit and the benefit of AWHW and its members.

59. On November 3rd, 2023, the Plaintiffs were lawfully on the strip job.

60. On November 3rd, 2023, the Plaintiffs successfully loaded the colt onto their trailer.

61. On November 3rd, 2023, after loading the colt, the Plaintiffs drove a few miles down the strip job road.

62. Christopher Reed was leading in a smaller Nat Geo vehicle.

63. Clyde Reed was driving a truck and horse trailer a few minutes behind Christopher Reed.

64. On November 3rd, 2023, an unmarked vehicle, driven by Jamie Holbrook, with lit up blue police-style lights pulled in front of Christopher Reed and blocked the road.

65. Once Christopher Reed stopped his vehicle, Jamie Holbrook pulled his vehicle up next to Christopher Reed's to speak.

66. Jamie Holbrook was wearing a hat imprinted with the words "Sheriff Deputy."

67. Jamie Holbrook asked: "You all have a yellow colt?"

68. Christopher Reed responded: "Yea, the one we bought from Darryl."

69. Jamie Holbrook responded: "Sit right there, you're under arrest."

70. At that point, Clyde Reed pulled up to the unfolding incident.

71. Jamie Holbrook approached Clyde Reed's vehicle and asked if the colt was in the trailer.

72. Clyde Reed responded: "I don't have to answer your questions."

73. Jamie Holbrook responded: "Yes you do! I am the god damn law!"

74. Jamie Holbrook then walked to the back of Clyde Reed's trailer.

75. Clyde Reed told Jamie Holbrook not to open the trailer.

76. Jamie Holbrook then opened the trailer and saw the colt.

77. Jamie Holbrook then walked back to Christopher Reed.

78. Christopher Reed and Jamie Holbrook then called Darryl Godsey on Christopher Reed's phone.

79. Darryl Godsey stated over speakerphone that the colt was his and he had sold it to Clyde Reed.

80. Mike Wolfe, a Major for the Breathitt County Sheriff, then arrived on scene.

81. Jamie Holbrook then let the colt loose.

82. Jamie Holbrook then stated aloud, "I'm tired of you Floyd County boys coming over here and dropping your horses off and putting them on us."

83. At some point, James Holbrook arrived on the scene.

84. The Plaintiffs, along with Jamie Holbrook, James Holbrook, and Mike Wolfe, waited for approximately an hour for the Plaintiffs' vehicle to be impounded.

85. Jamie Holbrook then commanded the Plaintiffs to drive their vehicles down the strip job road to get closer to the main road.

86. The Plaintiffs waited for the tow truck for roughly another 20 minutes.

87. Upon the arrival of the tow truck, Mike Wolfe stated to the Plaintiffs that he had to transport them.

88. During transport, Mike Wolfe, advised them not to get an attorney because the charges would be dismissed.

89. At no point was either Plaintiff ever *Mirandized*.

90. The vehicles were impounded for about a month and the Plaintiffs incurred substantial fees to have the vehicles released.

91. The truck driven by Clyde Reed suffered body and paint damage as a result of the towing and impoundment.

92. On November 3rd, 2023, Mike Wolfe transported the Plaintiffs to the Breathitt County Jailer's office.

93. On November 3rd, 2023, the Plaintiffs were handcuffed by the jailer in order to be transported to the Kentucky River Regional Jail in Perry County, Kentucky.

94. The Plaintiffs spent roughly 3 or 4 hours at the jail before being released on their own recognizance.

95. The Plaintiffs then each received a citation from Jamie Holbrook as arresting officer and Mike Wolfe as reviewer, charging them pursuant to KRS 514.030, Theft by unlawful taking stating property value of $1,000.00.

96. Approximately three weeks after November 3rd, 2023, the Plaintiffs received new citations bearing the signatures of Mike Wolfe and Jamie Holbrook revising the value of the property to $4,000.00.

97. Approximately three weeks after November 3rd, 2023, James Holbrook, contacted Steve Godsey, the brother of Darryl Godsey, via telephone.

98. On the telephone with Steve Godsey, James Holbrook stated to Steve Godsey that: "It would be best for Darryl if he didn't testify for the Reeds."

99. On December 5th, 2023, Jamie Holbrook and Mike Wolfe sought and obtained

indictment from the Breathitt County grand jury.

100.    At the grand jury proceeding, the Defendant, Jamie Holbrook, intentionally gave misleading and false testimony.

101.    At the grand jury proceeding, the Defendant stated the colt was the property of the government.

102.    At the grand jury proceeding, the Defendant made material omissions known to him at the time while testifying before the grand jury.

103.    Until April 11th, 2024, the colt remained on the strip job.

104.    On or around April 11th, 2024, the colt was injured.

105.    On April 11th, 2024, an emergency hearing was held to determine the fate of the colt in the Breathitt County Circuit Court.

106.    On April 11th, 2024, at the hearing, Defendant, Jamie Holbrook stated on the record the colt was a stray.

107.    On April 11th, 2024, the Breathitt Circuit Court ruled the colt was to be euthanized.

108.    On April 11th, 2024, the colt was euthanized by gunshot.

109.    From November 3rd, 2023, until April 11th, 2024, the Plaintiffs continued to regularly go up to the strip job to feed the colt and other horses on the strip job.

110.    On April 23rd, 2024, the Defendant, Jamie Holbrook sought a court order through the Plaintiffs' criminal case to completely forbid the Plaintiffs from going back up to the strip job.

111.    On April 23rd, 2024, the Circuit Court granted an order limiting the Plaintiffs'

access to the strip job, but still allowed the Plaintiffs to go tend to horses on the strip job at designated times.

112.     On October 11th, 2024, the indictments against the Plaintiffs were dismissed under case number 23-CR-00082, in Breathitt Circuit Court, by Hon. Lisa Whisman, Breathitt Circuit Judge, upon motion to dismiss and the prosecution's admission it could not meet its burden of proof at trial.

<u>**COUNT ONE**</u>
**42 U.S.C. § 1983**
*<u>False Arrest – Fourth Amendment – Christopher Reed</u>*

113.     At all relevant times on November 3rd, 2023, and at all relevant times thereafter, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook, were acting under the color of law.

114.     At relevant times on November 3rd, 2023, and at all relevant times thereafter, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook were acting in a concerted effort to knowingly cause harm to the Plaintiff and knowingly deprive him of his constitutional rights.

115.     On November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook, while acting under the color of law, falsely arrested the Plaintiff, Christopher Reed in violation of the Plaintiff's rights against unreasonable searches and seizures under the Fourth Amendment of the Constitution of the United States of America as incorporated unto the states through the Fourteenth Amendment.

116.     At the time of the arrest, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook, lacked probable cause to arrest the Plaintiff.

117.     At the time of the arrest, the Defendant, Jamie Holbrook, because he was the animal control officer, was forbidden from making any arrests, regardless of probable cause, by Kentucky Revised Statute 436.605.

118.     At the time of arrest, the Defendant, Jamie Holbrook, because he was the animal control officer, did not adhere to the procedural requirements of first obtaining a warrant prior to arrest as set forth in Kentucky Revised Statute 436.605.

119.     At the time of arrest, the facts and circumstances within Jamie Holbrook's knowledge were not sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed.

120.     At the time of arrest, the facts and circumstances within Mike Wolfe's knowledge were not sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed.

121.     The Plaintiff asserts causes of action against the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook under 42 U.S.C. § 1983, as applied by the Sixth Circuit United States Court of Appeals, for false arrest.

122.     At the time of arrest, Jamie Holbrook was also acting within the scope of his duties as a member and agent of AWHW.

123.     At the time of these events, Jamie Holbrook's relationship with AWHW and the interrelated nature of his official duties as animal control officer, as well as James Holbrook's business dealings with AWHW, render AWHW so intertwined with this conspiracy that it was also a participant in the deprivation of the Plaintiff's constitutional rights.

124.    Circumstances are such that AWHW knew or reasonably should have known of the plan against the Plaintiffs as well as the harm that would come to them.

125.    Circumstances are such that would lead a reasonable person to conclude that AWHW ratified the tortious and unconstitutional actions of the other Defendants.

126.    AWHW for all intents and purposes was also acting under the color of law at all relevant times and therefore AWHW should be subject to the same liability as Jamie Holbrook and/or the other defendants.

127.    Because of the Defendants' violation of the plaintiff's constitutional rights, the plaintiff incurred loss of freedom, anxiety, fear, aggravation, emotional distress, embarrassment, loss of business relationships, loss of reputation, physical discomfort from the arrest and loss of the value of the colt.

128.    The Plaintiff asks for compensatory damages, including but not limited to, loss of income, emotional distress, pain and suffering, cost of criminal defense, and loss of property, to be adjudged against the Defendants.

129.    The Plaintiff asks he be awarded attorney's fees.

130.    The Plaintiff asks that punitive damages be adjudged against the Defendants.

**<u>COUNT TWO</u>**
**42 U.S.C. § 1983**
*<u>False Arrest – Fourth Amendment – Clyde Reed</u>*

131.    At all relevant times on November 3rd, 2023, and at all relevant times thereafter, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook, were acting under the color of law.

132.    At relevant times on November 3rd, 2023, and at all relevant times thereafter, the

Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook were acting in a concerted effort to knowingly cause harm to the Plaintiff and knowingly deprive him of his constitutional rights.

133.     On November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook, while acting under the color of law, falsely arrested the Plaintiff, Clyde Reed in violation of the Plaintiff's rights against unreasonable searches and seizures under the Fourth Amendment of the Constitution of the United States of America as incorporated unto the states through the Fourteenth Amendment.

134.     At the time of the arrest, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook, lacked probable cause to arrest the Plaintiff.

135.     At the time of the arrest, the Defendant, Jamie Holbrook, because he was the animal control officer, was forbidden from making any arrests, regardless of probable cause, by Kentucky Revised Statute 436.605.

136.     At the time of arrest, the Defendant, Jamie Holbrook, because he was the animal control officer, did not adhere to the procedural requirements of first obtaining a warrant prior to arrest as set forth in Kentucky Revised Statute 436.605.

137.     At the time of arrest, the facts and circumstances within Jamie Holbrook's knowledge were not sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed.

138.     At the time of arrest, the facts and circumstances within Mike Wolfe's knowledge were not sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed.

139.    The Plaintiff asserts causes of action against the Defendants, Jamie Holbrook,

Mike Wolfe, and James Holbrook under 42 U.S.C. § 1983, as applied by the Sixth Circuit

United States Court of Appeals, for false arrest.

140.    At the time of arrest, Jamie Holbrook was also acting within the scope of his

duties as a member and agent of AWHW.

141.    At the time of these events, Jamie Holbrook's relationship with AWHW and the

interrelated nature of his official duties as animal control officer, as well as James

Holbrook's business dealings with AWHW, render AWHW so intertwined with this

conspiracy that it was also a participant in the deprivation of the Plaintiff's constitutional

rights.

142.    Circumstances are such that AWHW knew or reasonably should have known of

the plan against the Plaintiffs as well as the harm that would come to them.

143.    Circumstances are such that would lead a reasonable person to conclude that

AWHW ratified the tortious and unconstitutional actions of the other Defendants.

144.    AWHW for all intents and purposes was also acting under the color of law at all

relevant times and therefore AWHW should be subject to the same liability as Jamie

Holbrook and/or the other defendants.

145.    Because of the Defendants' violation of the plaintiff's constitutional rights, the

plaintiff incurred loss of freedom, anxiety, fear, aggravation, emotional distress,

embarrassment, loss of business relationships, loss of reputation, physical discomfort

from the arrest and loss of the value of the colt.

146.    The Plaintiff asks for compensatory damages, including but not limited to, loss of

income, emotional distress, pain and suffering, cost of criminal defense, and loss of property, to be adjudged against the Defendants.

147.    The Plaintiff asks he be awarded attorney's fees.

148.    The Plaintiff asks that punitive damages be adjudged against the Defendants.

**COUNT THREE**
**42 U.S.C. § 1983**
*Malicious Prosecution – Fourth Amendment – Christopher Reed*

149.    At all relevant times on November 3rd, 2023, and all relevant times thereafter, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook were acting under the color of law.

150.    At relevant times on November 3rd, 2023, and at all relevant times thereafter, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook were acting in a concerted effort to knowingly cause harm to the Plaintiff and knowingly deprive him of his constitutional rights.

151.    On or about November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook, while acting under the color of law, initiated malicious criminal prosecution against the Plaintiff, Christopher Reed in violation of the Plaintiff's rights against unreasonable searches and seizures under the Fourth Amendment of the Constitution of the United States of America as incorporated unto the states through the Fourteenth Amendment.

152.    On November 3rd, 2023, the Defendants lacked probable cause and at all times thereafter to institute prosecution against the Plaintiff for the crime of Theft by unlawful taking.

153.     At all relevant times, including the at the initiation of the prosecution, the Defendants lacked sufficient facts to establish probable cause to support the charge of Theft by unlawful taking.

154.     At the time of the arrest, the Defendant, Jamie Holbrook, because he was the animal control officer, was forbidden from making any arrests, regardless of probable cause, by Kentucky Revised Statute 436.605.

155.     At the time of arrest, the Defendant, Jamie Holbrook, because he was the animal control officer, did not adhere to the procedural requirements of first obtaining a warrant prior to arrest as set forth in Kentucky Revised Statute 436.605.

156.     In addition to the initial seizure of the Plaintiff, the Plaintiff had to undergo confinement up until the time of his release on personal recognizance.

157.     In addition to the initial seizure of the Plaintiff, the Plaintiff was forced to attend numerous court proceedings in relation to the criminal prosecution.

158.     In addition to the initial seizure, the Plaintiff faced a long term threat of prosecution which caused him fear and stress.

159.     The Defendant, Jamie Holbrook, on numerous occasions in furtherance of the prosecution of the Plaintiff, intentionally made material omissions of fact and intentionally testified falsely or with a reckless disregard for the truth.

160.     In instituting prosecution, the Defendants acted with malice.

161.     The criminal prosecution was dismissed in the Plaintiff's favor.

162.     The Plaintiff asserts causes of action under 42 U.S.C. § 1983, as applied by the Sixth Circuit United States Court of Appeals, for malicious prosecution.

163.     At all relevant times on the day of the Plaintiff's arrest and all relevant times

throughout the course of the prosecution instituted by the Defendants, Jamie Holbrook

was acting within the scope of his duties as a member and agent of AWHW.

164.     At the time of these events, Jamie Holbrook's relationship with AWHW and the

interrelated nature of his official duties as animal control officer, as well as James

Holbrook's business dealings with AWHW, render AWHW so intertwined with this

conspiracy that it was also a participant in the deprivation of the Plaintiff's constitutional

rights.

165.     Circumstances are such that AWHW knew or reasonably should have known of

the plan against the Plaintiffs as well as the harm that would come to them.

166.     Circumstances are such that would lead a reasonable person to conclude that

AWHW ratified the tortious and unconstitutional actions of the other Defendants.

167.     AWHW for all intents and purposes was also acting under the color of law at all

relevant times and therefore AWHW should be subject to the same liability as Jamie

Holbrook and/or the other defendants.

168.     Because of the Defendants' violation of the plaintiffs constitutional rights, the

plaintiffs experienced loss of freedom, anxiety, fear, aggravation, emotional distress,

embarrassment, loss of business relationships, loss of reputation, physical discomfort

from the arrest and loss of the value of the colt.

169.     The Plaintiff asks for compensatory damages, including but not limited to, loss of

income, emotional distress, pain and suffering, cost of criminal defense, and loss of

property, to be adjudged against the Defendants.

170.     The Plaintiff asks he be awarded attorney's fees.

171.     The Plaintiff asks that punitive damages be adjudged against the Defendants.

### COUNT FOUR
**42 U.S.C. § 1983**
*Malicious Prosecution – Fourth Amendment – Clyde Reed*

172.     At all relevant times on November 3rd, 2023, and all relevant times thereafter, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook were acting under the color of law.

173.     At relevant times on November 3rd, 2023, and at all relevant times thereafter, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook were acting in a concerted effort to knowingly cause harm to the Plaintiff and knowingly deprive him of his constitutional rights.

174.     On or about November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook, while acting under the color of law, initiated malicious criminal prosecution against the Plaintiff, Clyde Reed in violation of the Plaintiff's rights against unreasonable searches and seizures under the Fourth Amendment of the Constitution of the United States of America as incorporated unto the states through the Fourteenth Amendment.

175.     On November 3rd, 2023, the Defendants lacked probable cause and at all times thereafter to institute prosecution against the Plaintiff for the crime of Theft by unlawful taking.

176.     At all relevant times, including the at the initiation of the prosecution, the Defendants lacked sufficient facts to establish probable cause to support the charge of

Theft by unlawful taking.

177.    At the time of the arrest, the Defendant, Jamie Holbrook, because he was the

animal control officer, was forbidden from making any arrests, regardless of probable

cause, by Kentucky Revised Statute 436.605.

178.    At the time of arrest, the Defendant, Jamie Holbrook, because he was the animal

control officer, did not adhere to the procedural requirements of first obtaining a warrant

prior to arrest as set forth in Kentucky Revised Statute 436.605.

179.    In addition to the initial seizure of the Plaintiff, the Plaintiff had to undergo

confinement up until the time of his release on personal recognizance.

180.    In addition to the initial seizure of the Plaintiff, the Plaintiff has been permanently

deprived of his colt, as it was euthanized as a natural result of the prosecution.

181.    In addition to the initial seizure of the Plaintiff, the Plaintiff was forced to attend

numerous court proceedings in relation to the criminal prosecution.

182.    In addition to the initial seizure, the Plaintiff faced a long term threat of

prosecution which caused him fear and stress.

183.    The Defendant, Jamie Holbrook, on numerous occasions in furtherance of the

prosecution of the Plaintiff, intentionally made material omissions of fact and

intentionally testified falsely or with a reckless disregard for the truth.

184.    In instituting prosecution, the Defendants acted with malice.

185.    The criminal prosecution was dismissed in the Plaintiff's favor.

186.    The Plaintiff asserts causes of action under 42 U.S.C. § 1983, as applied by the

Sixth Circuit United States Court of Appeals, for malicious prosecution.

187.     At all relevant times on the day of the Plaintiff's arrest and all relevant times

throughout the course of the prosecution instituted by the Defendants, Jamie Holbrook

was acting within the scope of his duties as a member and agent of AWHW.

188.     At the time of these events, Jamie Holbrook's relationship with AWHW and the

interrelated nature of his official duties as animal control officer, as well as James

Holbrook's business dealings with AWHW, render AWHW so intertwined with this

conspiracy that it was also a participant in the deprivation of the Plaintiff's constitutional

rights.

189.     Circumstances are such that AWHW knew or reasonably should have known of

the plan against the Plaintiffs as well as the harm that would come to them.

190.     Circumstances are such that would lead a reasonable person to conclude that

AWHW ratified the tortious and unconstitutional actions of the other Defendants.

191.     AWHW for all intents and purposes was also acting under the color of law at all

relevant times and therefore AWHW should be subject to the same liability as Jamie

Holbrook and/or the other defendants.

192.     Because of the Defendants' violation of the plaintiffs constitutional rights, the

plaintiffs experienced loss of freedom, anxiety, fear, aggravation, emotional distress,

embarrassment, loss of business relationships, loss of reputation, physical discomfort

from the arrest and loss of the value of the colt.

193.     The Plaintiff asks for compensatory damages, including but not limited to, loss of

income, emotional distress, pain and suffering, cost of criminal defense, and loss of

property, to be adjudged against the Defendants.

194.     The Plaintiff asks he be awarded attorney's fees.

195.     The Plaintiff asks that punitive damages be adjudged against the Defendants.

**COUNT FIVE**
**42 U.S.C. § 1983**
*Misc. Unreasonable Searches and Seizures – Fourth Amendment*

196.     On November 3rd, 2023, Jamie Holbrook, under the color of law, stopped the

Plaintiff without any reasonable suspicion to believe criminal activity was taking place in

violation of the Fourth Amendment prohibition of unreasonable searches and seizures.

197.     On November 3rd, 2023, Defendant, Jamie Holbrook, acting under the color of

law, conducted a search of Clyde Reed's horse trailer without reasonable suspicion,

without probable cause, without a warrant, and without the Plaintiffs' consent in violation

of the Fourth Amendment's prohibition of unreasonable searches and seizures, as well as

its requirement that a warrant be issued to conduct a search.

198.     On November 3rd, 2023, acting under the color of law, without probable cause,

without a warrant, without an exigent circumstance justifying the need to proceed without

a warrant, without consent of the Plaintiffs, and in the presence of Mike Wolfe, officer for

the Breathitt County Sheriff, Jamie Holbrook took the colt, the property of Clyde Reed,

in violation of the Fourth Amendment's prohibition of unreasonable searches and

seizures, as well as its requirement that a warrant be issued.

199.     On November 3rd, 2023, acting under the color of law, without probable cause,

without a warrant, without an exigent circumstance justifying the need to proceed without

a warrant, without consent of the Plaintiffs, and in the presence of Mike Wolfe, officer for

the Breathitt County Sheriff, Jamie Holbrook impounded the Plaintiffs' vehicles, thereby

dispossessing them of their property in violation of the Fourth Amendment's prohibition of unreasonable searches and seizures, as well as its requirement that a warrant be issued to conduct a search.

200.    For all of the above distinct allegations in Count Five, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook were engaged in a concerted effort and a common cause to harm the Plaintiffs.

201.    Said allegations of Count Five were part of a larger scheme to violate the constitutional rights of the Plaintiffs and cause the Plaintiffs harm, and therefore, Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook should all be held liable for said allegations.

202.    Plaintiffs' assert causes of action under 42 U.S.C. § 1983 as to each incident in Count Five.

203.    At each incident cited in Count Five, Defendant Jamie Holbrook was also acting within the scope of his duties as an agent and member of AWHW.

204.    As a result of those incidents, Plaintiffs suffered property damage, loss of property, and $1,500 in impound fees.

205.    The Plaintiffs ask compensatory damages be assessed against the Defendants.

206.    The Plaintiffs ask they be awarded attorney's fees.

207.    The Plaintiffs ask that punitive damages be assessed against the Defendants.

## COUNT SIX
### 42 U.S.C. § 1983
### *Conspiracy – Fourth Amendment – Christopher Reed*

208.    On or before November 3rd, 2023, Defendants, Jamie Holbrook, Mike Wolfe, and

James Holbrook, while acting under the color of law, entered into an agreement to deprive the Plaintiff, Christopher Reed of his constitutional rights.

209.    On or before November 3rd, 2023, Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook conspired specifically to falsely arrest the Plaintiff and to institute malicious prosecution against the Plaintiff in violation of the Fourth Amendment of the United States Constitution as incorporated unto the states by the Fourteenth Amendment.

210.    On or before November 3rd, 2023, Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook formed a plan to arrest the Plaintiff on the strip job.

211.    On November 3rd, 2023, the Plaintiff was falsely arrested in furtherance of that conspiracy.

212.    On November 3rd, 2023, criminal prosecution was instituted against the Plaintiff in furtherance of that conspiracy.

213.    In addition to the initial seizure of the Plaintiff, the Plaintiff had to undergo confinement up until the time of his release on personal recognizance.

214.    In addition to the initial seizure of the Plaintiff, the Plaintiff has been permanently deprived of his colt, as it was euthanized as a natural result of the prosecution.

215.    In addition to the initial seizure of the Plaintiff, the Plaintiff was forced to attend numerous court proceedings in relation to the criminal prosecution.

216.    In addition to the initial seizure, the Plaintiff faced a long term threat of prosecution which caused him fear and stress.

217.    The Defendant, Jamie Holbrook, on numerous occasions in furtherance of the prosecution of the Plaintiff, intentionally made material omissions of fact and

intentionally testified falsely or with a reckless disregard for the truth.

218.     In instituting prosecution, the Defendants acted with malice.

219.     The criminal prosecution was dismissed in the Plaintiff's favor.

220.     The Plaintiff asserts causes of action under 42 U.S.C. § 1983, as applied by the Sixth Circuit United States Court of Appeals, for conspiracy to deprive the Plaintiff of his Fourth Amendment right against unreasonable searches and seizures.

221.     At all relevant times on the day of the Plaintiff's arrest and all relevant times throughout the course of the prosecution instituted by the Defendants, Jamie Holbrook was acting within the scope of his duties as a member and agent of AWHW.

222.     At the time of these events, Jamie Holbrook's relationship with AWHW and the interrelated nature of his official duties as animal control officer, as well as James Holbrook's business dealings with AWHW, render AWHW so intertwined with this conspiracy that they were also co-conspirators in the plan to deprive the Plaintiff of his constitutional rights and harm him.

223.     Circumstances are such that AWHW knew or reasonably should have known of the plan against the Plaintiffs as well as the harm that would come to them.

224.     Circumstances are such that would lead a reasonable person to conclude that AWHW ratified the tortious and unconstitutional actions of the other Defendants.

225.     AWHW for all intents and purposes was also acting under the color of law at all relevant times and therefore AWHW should be subject to the same liability as Jamie Holbrook and/or the other co-conspirators.

226.     Because of the Defendants' violation of the plaintiffs constitutional rights, the

plaintiffs experienced loss of freedom, anxiety, fear, aggravation, emotional distress,

embarrassment, loss of business relationships, loss of reputation, physical discomfort

from the arrest and loss of the value of the colt.

227.    The Plaintiff asks for compensatory damages, including but not limited to, loss of

income, emotional distress, pain and suffering, cost of criminal defense, and loss of

property, to be adjudged against the Defendants.

228.    The Plaintiff asks he be awarded attorney's fees.

229.    The Plaintiff asks that punitive damages be adjudged against the Defendants.

## **COUNT SEVEN**
### **42 U.S.C. § 1983**
### *Conspiracy – Fourth Amendment – Clyde Reed*

230.    On or before November 3rd, 2023, Defendants, Jamie Holbrook, Mike Wolfe, and

James Holbrook, while acting under the color of law, entered into an agreement to

deprive the Plaintiff, Clyde Reed of his constitutional rights.

231.    On or before November 3rd, 2023, Defendants, Jamie Holbrook, Mike Wolfe, and

James Holbrook conspired specifically to falsely arrest the Plaintiff and to institute

malicious prosecution against the Plaintiff in violation of the Fourth Amendment of the

United States Constitution as incorporated unto the states by the Fourteenth Amendment.

232.    On or before November 3rd, 2023, Defendants, Jamie Holbrook, Mike Wolfe, and

James Holbrook formed a plan to arrest the Plaintiff on the strip job and prevent him

from taking the colt.

233.    On November 3rd, 2023, the Plaintiff was falsely arrested in furtherance of that

conspiracy.

234.    On November 3rd, 2023, criminal prosecution was instituted against the Plaintiff in furtherance of that conspiracy.

235.    In addition to the initial seizure of the Plaintiff, the Plaintiff had to undergo confinement up until the time of his release on personal recognizance.

236.    In addition to the initial seizure of the Plaintiff, the Plaintiff has been permanently deprived of his colt, as it was euthanized as a natural result of the prosecution.

237.    In addition to the initial seizure of the Plaintiff, the Plaintiff was forced to attend numerous court proceedings in relation to the criminal prosecution.

238.    In addition to the initial seizure, the Plaintiff faced a long term threat of prosecution which caused him fear and stress.

239.    The Defendant, Jamie Holbrook, on numerous occasions in furtherance of the prosecution of the Plaintiff, intentionally made material omissions of fact and intentionally testified falsely or with a reckless disregard for the truth.

240.    In instituting prosecution, the Defendants acted with malice.

241.    The criminal prosecution was dismissed in the Plaintiff's favor.

242.    The Plaintiff asserts causes of action under 42 U.S.C. § 1983, as applied by the Sixth Circuit United States Court of Appeals, for conspiracy to deprive the Plaintiff of his Fourth Amendment right against unreasonable searches and seizures.

243.    At all relevant times on the day of the Plaintiff's arrest and all relevant times throughout the course of the prosecution instituted by the Defendants, Jamie Holbrook was acting within the scope of his duties as a member and agent of AWHW.

244.    At the time of these events, Jamie Holbrook's relationship with AWHW and the

interrelated nature of his official duties as animal control officer, as well as James Holbrook's business dealings with AWHW, render AWHW so intertwined with this conspiracy that they were also co-conspirators in the plan to deprive the Plaintiff of his constitutional rights and harm him.

245.    Circumstances are such that AWHW knew or reasonably should have known of the plan against the Plaintiffs as well as the harm that would come to them.

246.    Circumstances are such that would lead a reasonable person to conclude that AWHW ratified the tortious and unconstitutional actions of the other Defendants.

247.    AWHW for all intents and purposes was also acting under the color of law at all relevant times and therefore AWHW should be subject to the same liability as Jamie Holbrook and/or the other co-conspirators.

248.    Because of the Defendants' violation of the plaintiffs constitutional rights, the plaintiffs experienced loss of freedom, anxiety, fear, aggravation, emotional distress, embarrassment, loss of business relationships, loss of reputation, physical discomfort from the arrest and loss of the value of the colt.

249.    The Plaintiff asks for compensatory damages, including but not limited to, loss of income, emotional distress, pain and suffering, cost of criminal defense, and loss of property, to be adjudged against the Defendants.

250.    The Plaintiff asks he be awarded attorney's fees.

251.    The Plaintiff asks that punitive damages be adjudged against the Defendants.

**COUNT EIGHT**
**42 U.S.C. § 1983**
*Monell – Breathitt County Animal Control*

252.    Plaintiffs assert a claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and 42 U.S.C. § 1983 against the Defendant, Breathitt County Animal Control.

253.    Breathitt County Animal Control is a governmental entity operating in Breathitt County, Kentucky.

254.    On November 3rd, 2023, and thereafter, the Plaintiffs' Fourth Amendment Constitutional right against unreasonable searches and seizures as incorporated unto the state by the Fourteenth Amendment were violated by Jamie Holbrook.

255.    On November 3rd, 2023, and thereafter, Jamie Holbrook was acting under the color of law and within the scope of his employment for Breathitt County Animal Control when he violated the Plaintiffs' Fourth Amendment rights.

256.    Breathitt County Animal Control has a policy or custom of preventing or detering anyone from removing horses from the strip job.

257.    Breathitt County Animal Control has a policy or custom of arresting people when a crime is suspected.

258.    Breathitt County Animal Control has a policy or custom of arresting people when there is probable cause to believe a crime has been committed.

259.    Breathitt County Animal Control has a policy or custom of arresting people when there is not probable cause to believe a crime has been committed.

260.    Breathitt County Animal Control has a policy or custom of threatening criminal charges against individuals that regularly use the strip job for horse related purposes.

261.    Breathitt County Animal Control has a policy or custom of charging individuals found in possession of a horse on the strip job, with theft by unlawful taking, before

ascertaining whether subject horse is in fact the property of another.

262.     Breathitt County Animal Control has a policy or custom of not training its officers on relevant law.

263.     Breathitt County Animal Control has a policy or custom of not training its officers on the language set forth in Kentucky Revised Statute 259.110, which authorizes a stray equine to be taken up by any person or entity if found running at large outside of its enclosure or if it can be determined from the circumstances that its owner has abandoned it, or it has a policy or custom of directing its officers to disregard the language in KRS 259.110.

264.     Breathitt County Animal Control has a policy or custom of not training its officers on the language set forth in Kentucky Revised Statute 436.605, which forbids animal control officers from making arrests, or a policy or custom of directing its officers to disregard the language in KRS 259.110.

265.     Breathitt County Animal Control has a policy or custom of confiscating horses from individuals on the strip job without following any court hearing or administrative procedure.

266.     Breathitt County Animal Control has a policy or custom of confiscating horses from individuals on the strip job without a warrant.

267.     Breathitt County Animal Control has a policy of cooperating with AWHW in registering and selling horses found on the strip job even though Jamie Holbrook is also a member of AWHW.

268.     Because of those aforementioned policies and customs of the Breathitt County

Animal Shelter, the Plaintiffs were falsely arrested and maliciously prosecuted in violation of the Fourth Amendment.

269.    Plaintiffs seek compensatory damages against the Defendant.

270.    Plaintiffs asks that Jamie Holbrook be dismissed from his position as officer for Breathitt County Animal Control.

271.    Plaintiff asks for an injunction directing Breathitt County Animal Control to change its policies and customs.

272.    Plaintiff asks specifically Breathitt County Animal Control not be allowed to confiscate horses found on the strip job without due process.

**COUNT NINE**
*False Imprisonment*
Kentucky law
*(Christopher Reed)*

273.    On November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook as part of a concerted effort, arrested the Plaintiff, Christopher Reed.

274.    On November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook, did not have probable cause or legal justification to arrest the Plaintiff.

275.    At all relevant times, the Plaintiff was aware of the fact his freedom was restricted.

276.    At no point did the Plaintiff consent to being restrained.

277.    None of the Defendants are entitled to qualified immunity under Kentucky law.

278.    As a result of the False Imprisonment, Plaintiff has incurred damages, including but not limited to, pain and suffering, fear, annoyance, aggravation, emotional distress, loss of income, loss of property, and loss of reputation and standing in the community.

279.     At the time of arrest, Jamie Holbrook was acting within the scope of his duties as agent and member of AWHW.

280.     At the time of these events, Jamie Holbrook's relationship with AWHW and the interrelated nature of his official duties as animal control officer, as well as James Holbrook's business dealings with AWHW, render AWHW so intertwined with the Defendants, that it was for all intents and purposes also a participant in the commission of the tort.

281.     Circumstances are such that AWHW knew or reasonably should have known of the plan against the Plaintiffs as well as the harm that would come to them.

282.     Circumstances are such that would lead a reasonable person to conclude that AWHW ratified the tortious and unconstitutional actions of the other Defendants.

283.     AWHW should be subject to the same liability as Jamie Holbrook and/or the other defendants.

284.     AWHW is subject to liability under the laws of agency and respondeat superior.

285.     At the time of arrest, Mike Wolfe, though also in his individual capacity, he was acting as an officer for the Breathitt County Sheriff.

286.     Plaintiff asks for damages against the Breathitt County Sheriff pursuant to KRS 70.040.

287.     Plaintiff asks for judgment for compensatory damages against the Defendants.

288.     Plaintiff asks that punitive damages be adjudged against each Defendant.

## COUNT TEN
*False Imprisonment*
Kentucky law
*(Clyde Reed)*

289.    On November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook as part of a concerted effort, arrested the Plaintiff, Clyde Reed.

290.    On November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook, did not have probable cause or legal justification to arrest the Plaintiff.

291.    At all relevant times, the Plaintiff was aware of the fact his freedom was restricted.

292.    At no point did the Plaintiff consent to being restrained.

293.    None of the Defendants are entitled to qualified immunity under Kentucky law.

294.    As a result of the False Imprisonment, Plaintiff has incurred damages, including but not limited to, pain and suffering, fear, annoyance, aggravation, emotional distress, loss of income, loss of property, and loss of reputation and standing in the community.

295.    At the time of arrest, Jamie Holbrook was acting within the scope of his duties as agent and member of AWHW.

296.    At the time of these events, Jamie Holbrook's relationship with AWHW and the interrelated nature of his official duties as animal control officer, as well as James Holbrook's business dealings with AWHW, render AWHW so intertwined with the Defendants, that it was for all intents and purposes also a participant in the commission of the tort.

297.    Circumstances are such that AWHW knew or reasonably should have known of the plan against the Plaintiffs as well as the harm that would come to them.

298.    Circumstances are such that would lead a reasonable person to conclude that AWHW ratified the tortious and unconstitutional actions of the other Defendants.

299.    AWHW should be subject to the same liability as Jamie Holbrook and/or the other defendants.

300.    AWHW is subject to liability under the laws of agency and respondeat superior.

301.    At the time of arrest, Mike Wolfe, though also in his individual capacity, he was acting as an officer for the Breathitt County Sheriff.

302.    Plaintiff asks for damages against the Breathitt County Sheriff pursuant to KRS 70.040.

303.    Plaintiff asks for judgment for compensatory damages against the Defendants.

304.    Plaintiff asks that punitive damages be adjudged against each Defendant.

### COUNT ELEVEN
*Malicious prosecution*
Kentucky law
*(Christopher Reed)*

305.    On November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook, in concerted effort, initiated criminal prosecution against the Plaintiff, Christopher Reed, when Jamie Holbrook placed the Plaintiff under arrest.

306.    The Defendants in so initiating criminal prosecution, acted with malice by seeking to prevent others, and the Plaintiff specifically, from taking the horses off of the strip job.

307.    The Defendants, in deterring others from taking horses, sought to enrich themselves monetarily.

308.    The Defendants, at all relevant times, lacked probable cause to institute the prosecution.

309.    The Defendants planned to arrest the Plaintiff  before the incident of November 3rd, 2023.

310.    The criminal actions against the Plaintiff were ultimately dismissed in the Plaintiff's favor.

311.    None of the Defendants are entitled to qualified immunity under Kentucky law.

312.    As a result of the False Imprisonment, Plaintiff has incurred damages, including but not limited to, pain and suffering, fear, annoyance, aggravation, emotional distress, loss of income, loss of property, and loss of reputation and standing in the community.

313.    At the time of arrest, Jamie Holbrook was acting within the scope of his duties as agent and member of AWHW.

314.    At the time of these events, Jamie Holbrook's relationship with AWHW and the interrelated nature of his official duties as animal control officer, as well as James Holbrook's business dealings with AWHW, render AWHW so intertwined with the Defendants, that it was for all intents and purposes also a participant in the commission of the tort.

315.    Circumstances are such that AWHW knew or reasonably should have known of the plan against the Plaintiffs as well as the harm that would come to them.

316.    Circumstances are such that would lead a reasonable person to conclude that AWHW ratified the tortious and unconstitutional actions of the other Defendants.

317.    AWHW should be subject to the same liability as Jamie Holbrook and/or the other defendants.

318.    AWHW is subject to liability under the laws of agency and respondeat superior.

319.    At the time of arrest, Mike Wolfe, though also in his individual capacity, he was acting as an officer for the Breathitt County Sheriff.

320.     Plaintiff asks for damages against the Breathitt County Sheriff pursuant to KRS

70.040.

321.     Plaintiff asks for judgment for compensatory damages against the Defendants.

322.     Plaintiff asks that punitive damages be adjudged against each Defendant.

## COUNT TWELVE
*Malicious prosecution*
Kentucky law
*(Clyde Reed)*

323.     On November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and

James Holbrook, in concerted effort, initiated criminal prosecution against the Plaintiff,

Clyde Reed, when Jamie Holbrook placed the Plaintiff under arrest.

324.     The Defendants, in so initiating criminal prosecution, acted with malice by

seeking to prevent others, and the Plaintiff specifically, from taking the horses off of the

strip job.

325.     The Defendants, in deterring others from taking horses, sought to enrich

themselves monetarily.

326.     The Defendants, at all relevant times, lacked probable cause to institute the

prosecution.

327.     The Defendants planned to arrest the Plaintiff  before the incident of November

3rd, 2023.

328.     The criminal actions against the Plaintiff were ultimately dismissed in the

Plaintiff's favor.

329.     None of the Defendants are entitled to qualified immunity under Kentucky law.

330.     As a result of the False Imprisonment, Plaintiff has incurred damages, including

but not limited to, pain and suffering, fear, annoyance, aggravation, emotional distress, loss of income, loss of property, property damage, and loss of reputation and standing in the community, cost of legal defense.

331.    At the time of arrest, Jamie Holbrook was acting within the scope of his duties as agent and member of AWHW.

332.    At the time of these events, Jamie Holbrook's relationship with AWHW and the interrelated nature of his official duties as animal control officer, as well as James Holbrook's business dealings with AWHW, render AWHW so intertwined with the Defendants, that it was for all intents and purposes also a participant in the commission of the tort.

333.    Circumstances are such that AWHW knew or reasonably should have known of the plan against the Plaintiffs as well as the harm that would come to them.

334.    Circumstances are such that would lead a reasonable person to conclude that AWHW ratified the tortious and unconstitutional actions of the other Defendants.

335.    AWHW should be subject to the same liability as Jamie Holbrook and/or the other defendants.

336.    AWHW is subject to liability under the laws of agency and respondeat superior.

337.    At the time of arrest, Mike Wolfe, though also in his individual capacity, he was acting as an officer for the Breathitt County Sheriff.

338.    Plaintiff asks for damages against the Breathitt County Sheriff pursuant to KRS 70.040.

339.    Plaintiff asks for judgment for compensatory damages against the Defendants.

340.    Plaintiff asks that punitive damages be adjudged against each Defendant.

## COUNT THIRTEEN
*Tortious interference with contractual relations*
*Kentucky law*

341.    Starting in 2023 and ongoing till this day, the Defendants, Jamie Holbrook, Mike

Wolfe, James Holbrook, and AWHW have sought to intentionally interfere with Clyde

Reed's and Christopher Reed's business relationship with Darryl Godsey as well as their

relationship to the business dealings from the county at large.

342.    The Defendants have never had legal justification for that interference.

343.    None of the Defendants are entitled to immunity for their intentionally tortious

conduct.

344.    If AWHW is not found directly liable, it should still be held liable under the laws

of agency or respondeat superior.

345.    At the time of arrest, Mike Wolfe, though also in his individual capacity, he was

acting as an officer for the Breathitt County Sheriff.

346.    Plaintiffs ask for damages against the Breathitt County Sheriff pursuant to KRS

70.040.

347.    Plaintiffs ask for judgment for compensatory damages against the Defendants.

348.    Plaintiffs ask that punitive damages be adjudged against each Defendant.

## COUNT FOURTEEN
*Abuse of process*
*Kentucky law*

349.    On November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and

James Holbrook used the institution of criminal charges to separate the Plaintiffs from the

colt.

350.    On November 3rd, 2023, the Defendants, Jamie Holbrook, Mike Wolfe, and

James Holbrook used the institution of criminal charges to stop the Plaintiffs from

accessing the strip job.

351.    On November 3rd, 2023, the Defendants, Jamie Holbrook, Mike  Wolfe, and

James Holbrook used the institution of criminal charges for the purposes of financial gain

and not for advancing the public interest.

352.    The Defendants lacked probable cause to institute criminal charges against the

Plaintiffs.

353.    The Defendants were not seeking to fulfill a legitimate purpose in instituting

criminal charges against the Plaintiffs.

354.    None of the Defendants are immune from civil liability.

355.    If AWHW is not found directly liable, it should still be held liable under the laws

of agency or respondeat superior.

356.    At the time of arrest, Mike Wolfe, though also in his individual capacity, he was

acting as an officer for the Breathitt County Sheriff.

357.    Plaintiffs ask for damages against the Breathitt County Sheriff pursuant to KRS

70.040.

358.    As a result of the tortious abuse of process by the Defendants, the Plaintiffs

incurred pain and  suffering, mental anguish, anxiety, fear, emotional distress, depression,

loss of property, property damage,loss of business relations, loss of standing in the

community, and costs of legal defense.

359.     At the time of arrest, Mike Wolfe, though also in his individual capacity, he was

acting as an officer for the Breathitt County Sheriff.

360.     Plaintiffs ask for damages against the Breathitt County Sheriff pursuant to KRS

70.040.

361.     Plaintiffs ask for judgment for compensatory damages against the Defendants.

362.     Plaintiffs ask that punitive damages be adjudged against each Defendant.

## COUNT FIFTEEN
*Defamation*
Kentucky law

363.     Prior to, up to, and after initially charging the Plaintiffs with Theft by unlawful

taking, the Defendants, Jamie Holbrook, Mike Wolfe, and James Holbrook have,

independently and as part of a concerted effort, falsely stated that the Plaintiffs,

Christopher Reed and Clyde Reed were stealing horses on the strip job.

364.     The Defendants did publish that defamatory language about the Plaintiffs to

others.

365.     The Defendants published defamatory language was *per se* defamatory.

366.     The language published by the Defendants caused harm to the Plaintiffs'

reputations and standing in the community.

367.     The Defendants, by negligence, gross negligence, a reckless disregard for the

truth, or intentional action, published the defamatory language.

368.     The Defendants are not immune from civil liability for their defamation against

the Plaintiffs.

369.     The Defendants' defamatory language was intended to harm the Plaintiffs'

reputations.

370.     At the time the defamatory language was published, Jamie Holbrook was acting within the scope of his duties as agent and member of AWHW.

371.     At the time of publication, Jamie Holbrook's relationship with AWHW and the interrelated nature of his official duties as animal control officer, as well as James Holbrook's business dealings with AWHW, render AWHW so intertwined with the Defendants, that it was for all intents and purposes also a participant in the commission of the tort.

372.     Circumstances are such that would lead a reasonable person to conclude that AWHW ratified or authorized the defamatory publication by the Defendants.

373.     AWHW should be subject to the same liability as Jamie Holbrook and/or the other defendants.

374.     AWHW is subject to liability under the laws of agency and respondeat superior.

375.     At the time of arrest, Mike Wolfe, though also in his individual capacity, he was acting as an officer for the Breathitt County Sheriff.

376.     Plaintiff asks for damages against the Breathitt County Sheriff pursuant to KRS 70.040.

377.     Plaintiff asks for judgment for compensatory damages on all cognizable damages against the Defendants.

378.     Plaintiff asks that punitive damages be adjudged against each Defendant.

WHEREFORE the Plaintiffs make the following demands and prayers for relief:

a.     Judgment in favor of the Plaintiffs and against the Defendant;

b.      Trial by jury on all issues so triable;

c.      Special damages adjudged against the Defendant for, including but not limited to, Plaintiffs' cost of criminal defense, loss of property, and loss of income;

d.      General damages adjudged against the Defendant for, including but not limited to, Plaintiffs' pain and suffering, fear, emotional distress, loss of reputation and standing in the community;

e.      Punitive damages

f.      Injunctive relief;

g.      That Plaintiffs' attorney's fees be paid by the Defendant;

h.      Any and all other relief to which the Plaintiffs may be entitled.

**Respectfully submitted,**

**Christopher Reed and Clyde Reed, by and through counsel**

**/s/ Michael A. Johnson**
**Michael A. Johnson**
**Law Offices of David A. Johnson**
**461 Main Street**
**Hazard, Kentucky 41701**
**TEL: (606) 435-1552**
**FAX: (606) 435-1512**
**michael@davidajohnsonlaw.com**
*Counsel for the Plaintiffs*